

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 12, 1952

Hon. Henry Taylor, Jr.       Opinion No. V-1405.
County Attorney
Bell County              Re: Applicability of the motor
Belton, Texas                  vehicle use tax levied by
                                Section 2(b), Article 7047k,
                                V.C.S., to soldiers stationed
                                at Fort Hood who apply for
Dear Mr. Taylor:           Texas certificates of title.

You submit for the opinion of this office the question of the application of the use tax on motor vehicles levied by subsection (b) of Section 2 of SECTION VII of House Bill 285, Acts 52nd Leg., R.S. 1951, ch. 402, p. 695 (Sec. 2(b), Art. 7047k, V.C. S.), to soldiers stationed at Fort Hood in your county. This portion of the statute provides:

"When a person makes application for the initial certificate of title in this State on a particular motor vehicle, he shall pay a use tax on that motor vehicle in the sum of Fifteen Dollars ($15). No certificate of title or motor vehicle registration for such motor vehicle shall be issued until the use tax imposed by this subsection has been paid. However, a person is not liable for the tax imposed by this subsection if the sales or use tax imposed by any other provision of this Act has been previously paid upon such motor vehicle. It is the purpose of this subsection to impose a use tax upon motor vehicles brought into this State by new residents of this State."

The tax imposed by this statute is upon "motor vehicles brought into this State by new residents of this State." Unless a soldier is a new resident of this State within the purview of the statute, it is clear that the tax does not apply to him. The Legislature did not define what it meant by a resident or new resident. In Houston Printing Co. v. Tennant, 120 Tex. 539, 39 S.W.2d 1089 (1931), the Court, in discussing the subject, stated:

"Webster's New International Dictionary defines the word 'reside' as follows: 'To dwell permanently or for a considerable time; to have a settled abode for a time; to have one's residence or domicile.'

> "It has never been the policy of the courts of this state to give a strict technical construction to the words 'inhabitant,' 'resident,' 'domicile,' and 'residence.' It is well settled by the decisions of this state that the words 'inhabitant' and 'resident' and 'domicile' and 'residence' are interchangeable terms . . ."

In the absence of any intention to effect a change of domicile or residence, the domicile of a person in the military service is in no way affected or changed by reason of his entry into the service. A person in the military service does not lose or abandon the domicile which he had when he entered the service, nor does he acquire a new one at the place where he serves, regardless of the duration of his service at such place. In Gallagher v. Gallagher, 214 S.W. 516 (Tex. Civ. App. 1919), the Court stated:

> "Ordinarily, it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made, which could not occur in the case of a soldier in active service. It follows that the removal of the latter to a place and his residence there for years would not offer any probative evidence to corroborate evidence as to an intention to make the place his home, . . ."

The cases as will be noted go so far as to hold with respect to the domicile of persons in the military service that clear and positive proof is required to show a relinquishment of residence or domicile in one state and the acquisition of a new residence or domicile in another. Mere physical presence in the State of a person in the military service is not sufficient. Before a person in the military service can become a new resident of Texas it is essential that he abandon his residence in the state from whence he came and in which he was a resident at the time of his entry into the service. Until this occurs, soldiers stationed at Fort Hood located in your county are not subject to this tax for the obvious reason that they would not be "new residents of the State of Texas."

Again, it is said in Wilson v. Wilson, 189 S.W.2d 212 (Tex. Civ. App. 1945):

> "A review of the law pertaining to the residence of a soldier who is sent to Texas from another state under military orders properly begins with the case of Gallagher v. Gallagher, Tex. Civ. App., 214 S.W. 516, 518. It is there held that the words 'inhabitant,' 'citizen' and 'resident' mean substantially the same thing. In order to be an inhabitant one must acquire a domicile or home, and it must have the stamp of permanency on it. There must not only be an intention to establish a permanent domicile or home, but the intention must be accompanied by some act done in the execution of the intent. A soldier can abandon his domicile of origin and select another, yet, in order to show a new domicile during the term of enlistment, there must be the clearest and most unequivocal proof. . . ."

In Commercial Credit Corp. v. Smith, 143 Tex. 612, 187 S.W.2d 363 (1945), the Court quoted with approval the following statement:

> " 'A soldier or sailor does not acquire a new domicile merely from being stationed at a particular place in line of duty. His domicile remains the same as that which he had when he entered the service, unless he shows a change by proof of clear and unequivocal intention.' 15 Tex. Jur. 716. See also Therwanger v. Therwanger, Tex. Civ. App. 175 S.W. 2d 704."

It is not to be inferred from what we have said above that a soldier sent to Texas from another state under military orders may not under any circumstances become a resident or a new resident of this State and hence subject to this tax. What we do hold is that this liability does not arise merely because he is stationed in Texas, and this regardless of the length of his stay.

A soldier coming from another state to Texas, even though under military orders, may, if he choose, abandon his domicile or residence in the state from which he came and acquire a residence or new residence in the State of Texas. This would depend upon a bona fide intention accompanied by positive acts evidencing such intention.

## SUMMARY

A soldier who is a resident of another state stationed in Texas under military orders is not a new resident of Texas unless he abandons his residence in the state from which he is transferred and in which he had his residence at the time of transfer. His intention to become a resident or a new resident of Texas must be accompanied by positive acts and circumstances evidencing such intention before any such change is established. In the absence of these acts a soldier is not subject to the "use tax upon motor vehicles brought into this State by new residents of this State," since he is not a resident of Texas. Sec. 2(b), Art. 7047k, V.C.S.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

By L. W. Lollar

L. P. Lollar
Assistant

W. V. Geppert
Taxation Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

LPL/mwb